UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 2:15-14332-cv-Rosenberg/White

ALFRED RHINER,

    Plaintiff,

vs.

WEXFORD HEALTH SOURCES, INC., W.C.F., LAWNWOOD REGIONAL MEDICAL CENTER AND HEART INSTITUTE, DR. TAKASHI KOYAMA, D.M.D., DR. JOFFRE, DR. JENNY LIM, D.M.D., W. BASS, ARNP, P. PAINTER, LPN, L. GARRET, RN, N. TORRES, LPN, R. MOBLEY, LPN, C. JOHNSON, LPN, P. HULL, RN, C. DIXON, LPN and
DR. JANE DOE FROM S.F.R.C. (SOUTH FLORIDA RECEPTION CENTER),

    Defendants.
_____/

## DEFENDANTS' OMNIBUS MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendants, DR. JENNY LIM, D.M.D. DR. LARIA, and DR. JOFFRE, by and through their undersigned counsel, and files this their Omnibus Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 and states as follows in support thereof:

**I.  INTRODUCTION**

Plaintiff is serving a life sentence for first degree murder and brings this lawsuit as a *pro se* prison litigant.  As set forth more fully in the Statement of Undisputed Facts, Plaintiff's 42 U.S.C. § 1983 deliberate indifference claim follows a brutal prison beating Plaintiff suffered while housed at Okeechobee CI in September 2014. Plaintiff alleges that

the care and treatment he received at Okeechobee CI and later at the South Florida Reception Center amounted to deliberate indifference. The Defendants, Dr. Lim, Dr. Laria and Dr. Joffre were allegedly employees of Wexford Health Sources, Inc. (which is not a party in this matter) and worked at Okeechobee CI (Dr.'s Lim and Joffre) and the South Florida Reception Center (Dr. Laria).

This Court previously dismissed the original Complaint [DE 10], Plaintiff appealed, and the 11th Circuit Court of Appeals reversed and remanded the matter finding that Plaintiff had stated a cause of action (in pertinent part) against Dr. Lim, Dr. Laria, and Dr. Joffre and should be allowed to amend his complaint. [DE 25]. The Plaintiff filed his Amended Complaint [DE 33].

**Importantly, Defendants are forced to file this Motion for Summary Judgment without the benefit of having any medical records in this matter.** On April 23, 2018, this Court entered a paperless order (no Docket Entry number) setting forth that Dispositive Motions are due by September 24, 2018. As the Court is aware, Defendants attempted to get Plaintiff to execute a Florida Department of Corrections Consent and Authorization for Use and Disclosure, Inspection and Release of Confidential Information ("Authorization"). Defendants Motions to Compel are [DE 84] and [DE 87].

On September 19, 2018, Defendants moved this Court for an extension of the deadline to file a dispositive motion (then September 24, 2018). [DE 88] The Court granted the motion extending the deadline until December 23, 2018. [DE 95]. Defendants did not receive Plaintiff's executed FDOC authorization for release of his medical records until

October 17, 2018 and the executed authorizations for the two non-FDOC hospitals (that treated him and performed the maxillofacial surgery) until November 21, 2018. Immediately upon receiving the respective executed authorizations, Defendants contacted the FDOC and two hospitals to obtain Plaintiff's medical records.

To date, Defendants have not received any medical records. Defendants may need to retain an expert in support of a dispositive motion. Without any medical records, Defendants are unable to do so. The medical records Defendants are trying to obtain are absolutely crucial to the defense of this case—Plaintiff has sued Defendants for deliberate indifference to his serious medical needs. Defendants filed another Motion for Enlargement of Time to File Dispositive Motions on December 6, 2018. [DE 108]. At the time of this filing, the Court has not ruled on that Motion. So as not to waive the opportunity to file a dispositive motion, Defendants file the instant Motion for Summary Judgment. **In light of the foregoing, Defendants request that they be given the right to supplement this Motion for Summary Judgement once they finally receive the medical records.**

## II. STANDARD OF REVIEW

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. However, summary judgment is improper "if a reasonable fact finder evaluating evidence could draw more than one

inference from the facts, and if that inference introduces a *genuine* issue of material fact." Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995) (emphasis added). An issue of fact is "material" if it might affect the outcome of the case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is "genuine" if the record, taken in its entirety, could lead a rational trier of fact to find for the non-moving party. See Id.; Matsushita, 475 U.S. at 586. Ultimately, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992). However, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

The facts pertinent to this Motion for Summary Judgment are not *genuinely* disputable. Consistent with the following facts and legal authority, the Plaintiff's alleged denial of adequate care and treatment in this case does not rise to the level of deliberate indifference, and summary judgment should be granted as a matter of law.

### III.   STATEMENT OF UNDISPUTED FACTS

1. On September 7, 2014, the Plaintiff was being held as an inmate at Okeechobee CI and was beaten by other inmates suffering injuries which resulted in his emergent transport to Raulerson Hospital Emergency Room. [DE 33 ¶ 25].

2. At Raulerson Hospital, his facial lacerations were sewn up and his head laceration stapled. Id.

3. Subsequently, he was transported to Lawnwood Regional Medical Center where he underwent surgery for his broken jaw. [DE 33, ¶ 26].

4. Plaintiff was later transported back to Okeechobee CI and placed in a confinement isolation cell in the medical unit. [DE 33, ¶ 27].

5. While at Okeechobee CI, Plaintiff was seen by Defendant, Dr. Lim. [DE 33, ¶ 28].

6. Plaintiff was later transferred from Okeechobee CI to South Florida Reception Center from approximately September 24, 2014 to October 1, 2014. [DE 33, ¶ 29].

7. On September 25, 2014 Defendant, Dr. Laria made an appointment for Plaintiff to come to dental for a full analysis. Dr. Laria conducted a full exam, including x-rays, and sent him to a surgeon. Dr. Laria took him to the medical department and ordered treatment for him. [DE 33, ¶ 29].

8. On October 1, 2014, Plaintiff was transferred to Martin CI. [DE 33, ¶ 30].

9. At Martin CI, Plaintiff received medical and dental treatment. [DE 33, ¶ 30, 31].

10. On October 15, 2014, Plaintiff was transported to Lawnwood Regional Medical Center where he would later undergo a second surgery. [DE 33, ¶ 32].

IV. ARGUMENT

**THERE IS NO EVIDENCE TO SUPPORT PLAINTIFF'S CLAIMS THAT DR. LIM, DR. LARIA, OR DR. JOFFRE WERE DELIBERATELY INDIFFERENT TO HIS SERIOUS MEDICAL NEEDS.**

### A.     Dr. Laria

Plaintiff's allegations against Dr. Laria portray her as a hero rather than one who violated his right to be free from cruel and unusual punishment. There are absolutely no allegations whatsoever in the Amended Complaint to indicate she was deliberately indifferent to his serious medical needs. The entirety of the allegations against Dr. Laria as follows:

> On 9/25/14 Senior Dentist Maria E. Laria, DDS, would make an appointment for the Plaintiff to come to dental for a full analysis. She immediately questioned why there were no xrays in Plaintiff's file ... why I was not wired shut ... why my jaw was visibly out of line ... and no appointment for corrective surgery was scheduled. She would do a full exam, x-rays included, and put me in to see another surgeon.
>
> While examining the Plaintiff, she also looked at his facial and neck lacerations. When told how long the sutures had been left in, she marched him straight over to the medical department and ordered that the sutures be removed and the wounds to be cleaned.
>
> S.F.R.C.'s doctor, whom Dr. Laria instructed to remove Plaintiff's sutures, and clean his wounds totally disregarded all instructions once Dr. Laria went back to dental. The medical doctor (whose name Plaintiff does not have) opted instead to send the Plaintiff back to his confinement cell without even cleaning his wounds, led alone removing his sutures, or placing him on antibiotics for the infected lacerations. She (it was a female doctor) never once called him to medical to have his wounds cleaned and cared for in all of the eight (8) days the Plaintiff stayed in S.F.R.C.'s care.
>
> [DE 33, ¶ 29]

In paragraph 31, Plaintiff actually lauds Dr. Laria's treatment of him. "It would take

not more than a day in Dr. Laria's and Dr. Greenberg's **competent dental care** before the Plaitniff was seen, examined, and a **competent diagnosis** given. . . ." [DE 33, ¶ 31] (emphasis added). Without any allegations whatsoever (let alone record evidence) that Dr. Laria was deliberately indifferent to his serious medical needs, and to the contrary, allegations that Dr. Laria actually provided him at the very least "competent dental care," summary judgment for Dr. Laria must be granted.

    **B.**    **Dr. Joffre**

Similarly, there are no allegations that Dr. Joffre was deliberately indifferent to Plaintiff's serious medical needs. Other than in the style of the case, Dr. Joffre's name appears only twice in the Amended Complaint as follows: the first in paragraph 10 of the Amended Complaint which simply lists, "<u>Wexford H.S., W.C.F. Staff at Okeechobee C.I.</u> l0.) Defendant Dr. Joffre." [DE 33, ¶10]. The second is in paragraph 41, "Defendants Dr. Takashi Koyama, doctor S.F.R.C. (no records of her name, need additional info to acquire her name, Dr. M. Chryssiadis, Dr. Joffre, Dr. Jenny Lim, A.R.N.P. W. Bass, and all other Defendants were all under, at least, one of the above employment, and were all deliberately indifferent to the Plaintiff's serious medical/ dental needs." [DE 33, ¶ 41]. Plaintiff has no further allegations against Dr. Joffre. He has not alleged that Dr. Joffre is a physician or a dentist, whether he was in a supervisory or direct patient care role, or if he ever even saw the Plaintiff. Without any allegations (let alone record evidence) other than lumping Dr. Joffre in to a list of people Plaintiff accuses "were all deliberately indifferent," summary judgment for Dr. Joffre must be granted.

C.    Dr. Jenny Lim

Plaintiff's allegations against Dr. Lim are more robust than those against Dr. Laria and Dr. Joffre, but still there is no evidence that she was deliberately indifferent to Plaintiff's serious medical needs. The allegations, taken in the light most favorable to the Plaintiff, show at most medical negligence[1] and more likely than not, a difference in opinion as to treatment.

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain,' which is prohibited by the Eighth Amendment." Harris v. Leder, 519 Fed.Appx. 590, 595 (11th Cir. 2013) (citing Estelle v. Gamble, 429 U.S. 97, 104, (1976) (internal quotation marks omitted)). "To establish deliberate indifference to a serious medical need, an inmate must show: (1) an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm (the objective component); and (2) that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and **not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law** (the subjective component)." Harris, 519 Fed.Appx. at 595-96 (internal quotations and citations omitted) (emphasis added). **"Disagreement over a matter of medical judgment does not constitute cruel and unusual punishment."** Id. at 596 (emphasis added). "**[T]he question of whether governmental actors should have employed additional…forms of treatment 'is a classic example of a matter for medical judgment'**

---

[1] Dr. Lim suggests medical negligence solely for the sake of this argument and does not admit to such negligence.

**and therefore not an appropriate basis for grounding liability under the Eighth Amendment."** Id. (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting Estelle, 429 U.S. at 107) (emphasis added).

Additionally, there must be a showing that the acts of the medical defendants were intentional or reckless. Duff v. Prison Health Services, 2011 WL 4542507 at *8 (M.D. Fla. 2011) (citing Farmer v. Brennan, 511 U.S. 825, 833-38 (1994); Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that the Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law)). "The deliberate indifference standard is a demanding one, and a showing of negligence is never enough, as the Supreme Court has stated that 'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment…'" Duff, 2011 WL 4542507 at *8 (quoting Estelle, 429 U.S. at 104, 106). See also McElligott v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999) (holding that failure to diagnose an inmate's colon cancer did not constitute deliberate indifference, even though it could be deemed extremely negligent).

"In order to properly establish the subjective component of the deliberate indifference analysis, the plaintiff must show that: (1) the defendants subjectively knew that a substantial risk of harm existed, (2) they disregarded that substantial risk, and (3) their conduct in disregarding that risk was more deliberate than mere negligence." Williams v. Arnold, 207 Fed.Appx. 980, 984 (11th Cir. 2006). "To establish the subjective component of deliberate

indifference, the plaintiff must essentially show that the defendant intended to punish the plaintiff by depriving the plaintiff of necessary medical care." Id. at 984. "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). See also Miller v. Correctional Medical Services, Inc., 2010 WL 3723998 (M.D. Ala. 2010) (dismissing plaintiff's § 1983 claims arising from inmate's death from sepsis due to defendants' failure to properly treat inmate's decubitus ulcers, or bed sores, on his body; plaintiff's allegations that defendants failed to properly diagnose and treat the inmate, misprescribed medication, failed to provide adequate or timely examinations, appropriate monitoring of medical conditions, appropriate plans of care, assessment of underlying medical conditions, and failed to follow internal policies and protocols for patient records, monitoring and treatment, may show gross negligence or medical malpractice, but did not rise to the level of deliberate indifference); Williams v. Arnold, 207 Fed.Appx. 980, 985 (11th Cir. 2006) (concluding that jail officials' delays in obtaining inmate's prescription medications for inmate's serious medical condition did not constitute deliberate indifference to support § 1983 claim for Eighth Amendment violation); Deese v. City of Jacksonville, 2008 WL 5158289 at *12 (M.D. Fla. 2008) (concluding that defendants' treatment of inmate's sepsis, infected toe, and gangrene, which eventually led to amputation of leg, did not rise to level of deliberate indifference); Lee v. Alachua County, 2011 WL 2580162 (N.D. Fla. 2011) (dismissing inmate's § 1983 claim on grounds that alleged medical treatment of inmate's severe stomach virus did not rise to level of deliberate indifference; the defendants' failure to treat the inmate within the

medical department and the nurse's recommendation that the inmate simply stay in bed and drink plenty of water until the virus ran its course did not constitute deliberate indifference—disputes in medical judgment do not rise to the level of deliberate indifference); Schneider v. Parker, 2011 WL 722759 at *4 (M.D. Fla. 2011) (dismissing inmate's § 1983 claim on grounds that alleged medical treatment of inmate's staph infection and delay in such treatment did not rise to level of deliberate indifference; inmate's claim essentially disagreed with course of treatment prescribed and thus, fails to state a viable claim of deliberate indifference to medical care); Kidd v. Maryweather, 2007 WL 2206847 at *6 (M.D. Ala. 2007) (concluding that treatment of inmate's spider bite and resultant staph infection and pneumonia and inmate's contention that he should have been placed in a medical observation unit and prescribed other antibiotics did not constitute deliberate indifference).

Finally, as to the requisite element of causation, the Plaintiff must prove that Dr. Lim's actions actually caused his injuries. "As with any tort claim, the prisoner must show the injury was caused by the defendant's wrongful conduct." See Clark v. Tucker, 2014 WL 68646 (M.D. Fla. Jan. 8, 2014) 13-CV-2642 citing Goebert v. Lee County, 510 F.3d 1312 (11th Cir. 2007).

## V.  CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in favor of the Defendants, Dr. Lim, Dr. Laria, and Dr. Joffre.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was E-filed with the Clerk of Court through the E-Filing Portal **December 20, 2018**, and was served by the undersigned counsel via U.S. Mail to:  ALFRED RHINER, Plaintiff Pro Se, DC# Y02241, Avon Park Correctional Institution, 8100 Highway 64 East, Avon Park, Florida 33825.

        CHIMPOULIS & HUNTER, P.A.
        Attorneys for Defs/ Dr. Lim; Dr. Laria; Dr. Joffre
        150 South Pine Island Road| Suite 510
        Plantation, Florida   33324
        Phone:  (954) 463-0033
        Fax: (954) 463-9562

BY: /s/ Alexander Dombrowsky
        ALEXANDER DOMBROWSKY, ESQUIRE
        Fla. Bar No.:  186260
        adombrowsky@chl-law.com
        M. KATHERINE HUNTER, ESQUIRE
        Florida Bar No.:  981877
        khunter@chl-law.com